GREGORY CHARLES, ESQ., BAR NO. 208583
CAMPEAU GOODSELL SMITH
440 North First Street, Ste. 100
San Jose, California 95112
Telephone: 408.295.9555
Facsimile: 408.852.0233
gcharles@campeaulaw.com

Counsel for Excel Innovations, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE:<br><br>HSR GENERAL ENGINEERING CONTRACTORS, INC.,<br><br>    DEBTOR. | Case No. 10-58737<br><br>Chapter 11<br><br>Adversary No. 10-05309 |
| HSR GENERAL ENGINEERING CONTRACTORS, INC.,<br><br>    PLAINTIFF,<br><br>    V.<br><br>SAFECO INSURANCE COMPANIES,<br><br>    DEFENDANT. | REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR A PRELIMINARY INJUNCTION<br><br>HONORABLE CHARLES NOVACK<br><br>DATE: OCTOBER 8, 2010<br>TIME: 10:00 A.M. |

## I. INTRODUCTION

As noted in the moving papers, this adversary proceeding arises from First National Insurance Company's ("First National") willful hindrance of the HSR General Engineering Contractors, Inc.'s ("HSR") efforts to collect monies necessary for the reorganization of the debtor's estate. The opposition papers readily admit this consideration mandating the issuance of injunctive relief. Further, the authority cited by the defendant ignores applicable provisions of the Code and California Law. Thus, its willful conduct stands in violation of the automatic stay, and intervention of the Court is necessary.

## II. ARGUMENT

### A. SINCE THE DEFENDANT FAILED TO ELECT REMEDIES, THE MOTION IS PROPERLY GRANTED.

Under California law, a surety has two basic rights. "The primary remedy that the surety can actually invoke against the principal is a suit based on the implied obligation of reimbursement." *Golden Eagle Ins. Co. v. First Nationwide Financial Corp.*, (1994) 26 Cal.App.4th 160,168. "Subrogation in California suretyship law thus is not the surety's primary remedy for recourse against the principal; it refers instead to a variety of rights which the surety may assert against third parties, cosureties, and property...." *Id.* Analytically, the two claims are distinct and subject to different conditions and restrictions. *Id*.

While the Code preserves both claims in bankruptcy, it specifically requires the defendant to elect remedies. It can seek reimbursement or subrogation but not both. §509(b)(1). Here, the defendant invokes both remedies, so neither is applicable. Therefore, the defendant must elect a remedy and clearly state its position.

### B. § 509 PRECLUDES THE DEFENDANT FROM ASSERTING SUBROGATION RIGHTS FOR CLAIMS THAT IT HAS NOT PAID.

Analysis of the defendant's subrogation rights, if any, begins with § 509 of the Code that provides.

> Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, **and that pays such claim**, is subrogated to the rights of such creditor to the extent of such payment (emphasis).

While the defendant attempts to inflate its position by including potential exposure and pending claims, the self-serving evidence is irrelevant. As of the petition date, the defendant admits that it paid claims totaling $233,244 and incurred costs and expenses of $17,530. (Dorsa Decl., ¶3, Ex. 3). Thus, subrogation rights, if any, are limited to these amounts.

### C. SINCE THE DEFENDANT IS NOT ENTITLED TO EQUITABLE SUBROGATION, THE CONTRACT BALANCES ARE PROPERTY OF THE ESTATE.

In addition to § 509, the defendants must establish subrogation rights under California law. Despite this consideration, the defendants almost exclusively cite cases that do not involve California law and claims that its alleged subrogation rights, "exempt the contract balances from the estate." (p. 6). In fact, however, the very cases cited by the defendant demonstrate that equitable subrogation is not available. In *Pearlman v. Reliance Insurance Company 10*, 83 S.Ct. 232 (1962), which was decided prior to the enactment of the Bankruptcy Code, a contractor entered into a construction contract with the United States government. The surety executed a performance and payment bond as required by the Miller Act. During the course of construction, the contractor experienced financial problems and defaulted on the contract. The government and the contractor terminated the contract by agreement because of the default. At the end of the job, there was approximately $88,000 in a remainder fund. The surety filed an action alleging that it owned the fund. The trustee maintained that the fund was property of the estate. The Supreme Court sided with the surety, but the case turned on the fact that the surety completed the work.

The defendant also *cites In re Larbar Corp.* 177 F.3d 439, 444 (6th Cir. 1999), but that case, interpreting Kentucky Law, involved a surety that completed the work.

> This doctrine arises when a contractor defaults on its obligations and a surety completes the work called for by the contract and pays all of the related bills. The law is clear that a surety under these circumstances has a right to the payments due the contractor to the extent of full reimbursement.

While the defendant cites *In re E.R. Fegert, Inc.*, 88 B.R. 258, 260 (9th Cir. BAP 1988), that case involved a Miller Act claim in the State of Washington. While it did not address California Law, the case does hold, "[A] surety who undertakes to complete the project is entitled to the funds in the hands of the government as a subrogee having the same rights to the funds as the government." Thus, the case is not applicable.

In fact, the cases recognize a distinction between performance and payment

bonds that is illustrated in *National Fire Ins. Co. of Hartford v. Fortune Const. Co.*, 320 F.3d 1260 (11th Cir. 2003).

> The distinction between a surety's rights when performing under a payment bond or a performance bond is important. When a surety completes a project itself or pays the excess completion costs pursuant to the performance bond, the surety confers a benefit upon the obligee, whether the obligee is the government or a private entity. That benefit relieves the obligee of the burden of completing the construction. In such circumstances an implicit agreement exists that the surety has a right to all retained funds and any remaining progress sums, and the obligee does not possess a right to set-off.

Here, all payments have been made on payment bonds. Thus, the defendant cannot rely upon case law addressing performance bonds.

### D. THE LAW OF SUBROGATION IN CALIFORNIA DOES NOT GIVE THE DEFENDANT TITLE TO THE FUNDS AT ISSUE.

Moreover, California Law does not recognize unfettered rights in the context of subrogation. In fact, the cases do not hold that the surety actually owns the contract proceeds. Rather, subrogation rights are statutorily defined and only place the surety in the same position as the creditor. Cal. Civ. Code § 2848.[1]

In addition, subrogation rights do not automatically trump the rights of third parties.

> The prerequisites to the assertion of a right of subrogation are these: " '(1) Payment must have been made by the subrogee to protect his own interest. (2) The subrogee must not have acted as a volunteer. (3) The debt paid must be one for which the subrogee was not primarily liable. (4) The entire debt must have been paid. **(5) Subrogation must not work any injustice to the rights of others.**' " (*Caito v. United California Bank* (1978) 20 Cal.3d 694, 704, 144 Cal.Rptr. 751, 576 P.2d 466; see also *Grant v. de Otte* (1954) 122 Cal.App.2d 724, 728, 265 P.2d 952; 11 Witkin, Summary of Cal. Law, supra, § 169, at p. 849.) *Golden Eagle Ins. Co.* 26 Cal.App.4th at 169 (bold added).

Here, the defendant certainly cannot satisfy the fifth component.

> [T]he right of subrogation "may be invoked against a third party only if

---
[1] "A surety, upon satisfying the obligation of the principal, is entitled to enforce every remedy which the creditor then has against the principal to the extent of reimbursing what he has expended, and also to require all his co-sureties to contribute thereto, without regard to the order of time in which he became such."

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
4

he is guilty of some wrongful conduct which makes his equity inferior to that of plaintiff." (11 Witkin, Summary of Cal.Law, supra, Equity, § 172, at p. 853; *Jones v. Bank of America* (1942) 49 Cal.App.2d 115, 123, 121 P.2d 94.) This is the so-called "doctrine of superior equities." (*Continental Insurance Co. v. Morgan, Olmstead, Kennedy & Gardner* (1978) 83 Cal.App.3d 593, 602, 148 Cal.Rptr. 57; *Meyers v. Bank of America, supra*, 11 Cal.2d at pp. 98, 102-103, 77 P.2d 1084.) Under this doctrine, the fault of the third person which creates the superior equity in the surety must be "related to the 'primary cause' of the loss." (Id., 83 Cal.App.3d at pp. 603-604, 148 Cal.Rptr. 57.) *Id.* at 171.[2]

Notably, the defendant failed to offer any evidence that a single creditor is guilty of some wrongful conduct which makes its equity inferior to that of the defendant. Thus, subrogation is not available under California law.

### E. EQUITABLE SUBROGATION IS SUBJECT TO STRONG-ARM POWERS.

Even if equitable subrogation were available, it is subject to the trustee's strong-arm powers. Judge Montali discussed this consideration as well as the injustice to other creditors in *In re Deuel*, 361 B.R. 509, 511 (9th Cir. BAP 2006) and stated, "Equitable subrogation would unduly prejudice the debtor's other creditors and the bankruptcy estate and cannot override the trustee's statutory strong arm power."

### F. SUBROGATION RIGHTS, IF ANY, ARE LIMITED BY CALIFORNIA LAW CITED IN *AMERICAN FIDELITY FIRE INS. CO. V. U.S.*, 385 F.SUPP. 1075 (N.D. CA 1974)

As noted in the moving papers, *American Fidelity Fire Ins. Co.* presents analogous facts. Specifically, a contractor's surety brought action seeking a determination that it was entitled to certain funds due from the state under a public works contract. The United States contended that the funds were property of the estate, and its tax lien primed any rights that the surety had. Notably, the case involved a payment bond.

The defendant claims that the case misstates California law, but *American Fidelity Fire Ins. Co.* relies upon Cal. Civil Code § 2848 for the proposition that "[A]

---

[2] Cf. *Liberty Mut. Ins. Co. v. Kleinman*, (1957) 149 Cal.App.2d 404, 406 ("It was held in *Meyers v. Bank of America Nat. Trust & Savings Ass'n*, 11 Cal.2d 92, 102, 77 P.2d 1084, that the right of subrogation does not exist in favor of a surety on a fidelity bond except against persons who participated in the wrongful act against the surety's principal;"

surety … is subrogated only to such rights as the creditors had against the principal." § 2848 has not changed.

Further, the defendant claims that *Pacific Employers Insurance Co. v. California*, 3 Cal.3d 573 (1970) misapplied California law when it held, "It has now been held in California that, if the surety on a public works contract becomes liable to the contractor's laborers and materialmen, the surety is subrogated to the contractor's right to the public entity contract funds only if the laborers and materialmen have perfected their stop notice claims." *Leatherby Ins. Co. v. City of Tustin*, (1977) 143 Cal.Rptr. 153, 76 Cal.App.3d 678, however, augurs the same result. There, stop notice claimants had filed suit. Thus, the surety succeeded to those rights.

Finally, these cases are consistent with Cal. Civil Code § 2848. Again, the defendant only succeeded to the rights of the creditors whose claims it paid, but none of the creditors filed and perfected stop notice claims before being paid. Therefore, the defendant only did not acquire an interest in the funds.

### G. CALIFORNIA LAW DOES NOT RECOGNIZE EQUITABLE LIENS IN FAVOR OF A SURETY.

Finally California law does not grant a surety an equitable lien. *Adamson v. Paonessa,* (1919) 180 Cal. 157, 161. There the court stated.

> The first ground advanced is that, by virtue of its payments as surety for Paonessa of the claims against him for materials and labor furnished, it acquired by subrogation an equitable lien upon any moneys or bonds due under the contract in payment for the work superior to any assignment or other disposition which Paonessa might have made. There is no doubt but that the payment by the surety company pursuant to its obligations as surety would work a subrogation in its favor of any rights which the claimants had whose claims were paid. It is equally clear that the subrogation would give no further rights than this.

Thus, the defendant can only prevail if it has a perfected security interest that was created by the General Indemnity Agreement.

### H. SINCE THE DEFENDANT'S LIEN IS PREFERENTIAL, ITS ASSIGNMENT AND "TRUST FUND" THEORIES ARE INAPPLICABLE

The defendant also relies upon foreign authority and claims that it owns the

Campeau Goodsell Smith

funds pursuant to an assignment, but *American Fidelity Fire Ins. Co* held that a General Indemnity Agreement is not an absolute assignment. It fact, the agreement merely creates a security interest ("We are of the opinion that the assignment to surety pursuant to its agreement was an account or contract right within the meaning of Cal.Commercial Code § 9106 and, as such, a security interest subject to the provisions of Division 9 of the Cal.Commercial Code").

### I. SINCE THE DEFENDANT FILED A FINANCING STATEMENT, IT CONCEDES THAT THE GENERAL INDEMNITY AGREEMENT IS AN ASSIGNMENT FOR SECURITY.

In *Gold Coast Leasing Co. v. California Carrots, Inc.* (1979) 93 C.A.3d 274, the trial court found that an assignment was an assignment outright and not an assignment for security. The distinction is important because an assignment for security is governed by the Commercial Code and its rules regarding perfection. The Court of Appeal reversed this decision holding that substantial evidence did not support the trial court's finding.

The court based its decision, in part, upon official comment to Cal. Comm. Code 10303.

> The subdivision states a rule of construction that distinguishes a commercial assignment, which substitutes the assignee for the assignor as to rights and duties, and an assignment for security or financing assignment, which substitutes the assignee for the assignor only as to rights. Note that the assignment for security or financing assignment is a subset of all security interests.

Here, the General Indemnity Agreement is intended to create a security agreement. Specifically, it assigns rights to the defendant. More importantly, the agreement contains the following clause, "The surety agrees to forbear exercising the [assignment] rights granted to it … until there is an event of default" (Dorsa Decl., Ex. 2, p. 2). Thus, the assignment was for security only.

Finally, the filing of the financing statement on May 26, 2010 (Dorsa Decl., Ex. 2) is an outright admission that the General Indemnity Agreement is an assignment for security. If it were an assignment, then the transaction would not be governed by the Commercial Code, and a financing

statement would not be necessary.

Undoubtedly, the defendant will claim that it was merely wearing a belt and suspenders, but the case law takes a different view. In *Gold Coast Leasing Co.*, the Court of Appeal noted that the assignee filed a financing statement and held that act to be consistent with the creation of a security interest and inconsistent with an outright assignment ("The filing of the financing statement ... reinforces our conclusion that the parties intended the transaction to create a security interest ..." *Gold Coast Leasing Co.* 93 C.A.3d at 274).

### J. THE DEFENDANT CONCEDES THAT IT IS VIOLATING THE AUTOMATIC STAY.

Although Section 362(a) imposes an affirmative duty to discontinue post-petition collection actions, *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1216 (9th Cir. 2002), the defendant admits that it is attempting to collect the contract proceeds pursuant to the cease and desist letters. Given this willful violation of the automatic stay, injunctive relief is necessary to protect the interests of the debtor, the estate, and its creditors.

### III. CONCLUSION

For the foregoing reasons, the application should be granted.

Dated: October 1, 2010

                                            CAMPEAU GOODSELL SMITH
                                            A Law Corporation

                                            By: /s/Gregory J. Charles
                                                  Gregory Charles
                                                  Attorneys for the Plaintiff