Entered on Docket
December 10, 2010
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes
the order of the court. Signed December 09, 2010

_____
**Charles Novack**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 10-58737 CN |
| HSR GENERAL ENGINEERING CONTRACTORS, INC., | Chapter 11 |
| Debtor. | |
| HSR GENERAL ENGINEERING CONTRACTORS, INC., | Adversary No. 10-5309 |
| Plaintiff, | |
| vs. | **ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** |
| SAFECO INSURANCE COMPANIES AND FIRST NATIONAL INSURANCE COMPANY OF AMERICA, | |
| Defendants. | |

This matter is before the court on the motion of plaintiff HSR General Engineering Contractors, Inc. ("HSR") for a preliminary injunction requiring defendants to retract certain letters sent to HSR's customers and to discontinue all actions to collect receivables owed to HSR. Having considered the parties' written and oral arguments, the plaintiff's motion is denied without prejudice for the reasons explained below.

1

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**
Case: 10-05309    Doc# 17    Filed: 12/09/10    Entered: 12/10/10 07:45:59    Page 1 of 6

# FACTUAL BACKGROUND

HSR, a company specializing in heavy civil construction, is the general contractor for several ongoing public improvement projects. In January 2008, HSR and defendant Safeco Insurance Company ("Safeco") agreed that various Safeco companies (including defendant First National Insurance Company of America ("First National")) would act as HSR's surety and issue the required payment and performance bonds. To facilitate the arrangement, HSR executed a General Indemnity Agreement for Contractors in favor of Safeco ("Agreement"). The Agreement requires HSR to indemnify any loss incurred by a Safeco surety on a bonded project. The Agreement also contains several measures intended to provide collateral security for HSR's repayment obligations in the event of default. First, HSR agreed that the sureties would have a security interest (as of the execution date of any bond) in, among other things, any money due to HSR on the bonded project. The surety, however, could not exercise any rights under the security interest absent a default. The Agreement further provides that all monies that HSR earned would be "trust funds . . . for the benefit of and for payment of HSR's obligations for labor, material and supplies furnished to [HSR] in connection with a [bonded contract]." HSR also agreed that the surety could file the Agreement as a financing statement.

Between March 2008 and August 2009, First National issued payment and performance bonds on seven of HSR's public works projects (the "bonded jobs"). When HSR experienced financial difficulties in mid 2010, various unpaid subcontractors and suppliers looked to First National for payment under the bonds. First National thereafter wrote to the owners of the bonded jobs advising them that it held an assignment of and security interest in any funds owed to HSR. It further instructed the owners to cease paying HSR for work performed unless the owner first obtained First National's consent. HSR learned of the letters when the owners refused to pay HSR's account receivables. HSR immediately asked First National to retract the stop payment letters so it could collect funds needed to complete the projects and make them profitable. Despite lengthy negotiations, First National refused, and the resulting decrease in HSR's operating funds led HSR to file a chapter 11 bankruptcy on August 23, 2010.

In this adversary proceeding, HSR alleges that the funds due on the bonded jobs are property of its bankruptcy estate and that the defendants are willfully interfering with HSR's right to gather and

2

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**
Case: 10-05309   Doc# 17   Filed: 12/09/10   Entered: 12/10/10 07:45:59   Page 2 of 6

administer that property. HSR asserts that defendants' interference constitutes an exercise of control over estate property in violation of the automatic stay. HSR also seeks a judicial declaration that these receivables are not subject to any trust or lien and that it can use the money immediately to pay any subcontractor or supplier whether or not connected with a bonded job (including payments on pre-petition obligations incurred on the bonded jobs). It further requests injunctive relief to prevent defendants from exercising control over the funds and a determination that Safeco's UCC financing statement filed in May 2010 is avoidable as a preferential transfer.

## DISCUSSION

Injunctions, even when preliminary, are an extraordinary form of relief that is only warranted upon a clear showing of entitlement. *Winter v. Natural Res. Def. Council*, Inc., – U.S. –, 129 S. Ct. 365, 375-76 (2008). To obtain such extraordinary relief, a plaintiff must establish fours elements: 1) a likelihood of success on the merits of its case, 2) a likelihood that it will suffer irreparable harm in the absence of preliminary relief, 3) that the balance of equities tips in favor of preliminary relief and 4) an injunction would be in the public interest. *American Trucking Assn., Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009), *citing*, *Winter*, 129 S. Ct. at 374. Although all four elements must be met, the Ninth Circuit continues to apply a "sliding scale" approach where a court balances the traditional elements so that a strong element may offset a weaker one. *Alliance for Wild Rockies v. Cottrell*, – F.3d –, 2010 WL 3665149, at *4-5 (9th Cir. Sept. 22, 2010)(expressly holding that the sliding scale approach survived the Supreme Court's decision in *Winter*).

HSR's moving papers did not address the four elements necessary for injunctive relief. Nevertheless, the court considered both parties' submissions in light of the required elements and, during the hearing, requested that counsel address those elements. Based on the record, HSR is not entitled to preliminary relief because it failed to establish a sufficient likelihood of irreparable harm.

HSR first asserted that it did not need to demonstrate irreparable harm because defendants are violating the automatic stay, a statutory violation. HSR's argument presumes, however, that the receivables at issue are property of the estate and therefore subject to the stay. HSR did not, however, for purposes of its motion for a preliminary injunction, persuade the court to ignore the Agreement's trust language and determine that First National is solely a secured creditor. In addition, the fact that

3

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**
Case: 10-05309   Doc# 17   Filed: 12/09/10   Entered: 12/10/10 07:45:59   Page 3 of 6

1 First National's conduct is alleged to violate the automatic stay does not remove the element of
2 irreparable harm from the preliminary injunction standard. Such an effect would be inconsistent with
3 the Supreme Court's decision in *Winter,* where the plaintiff alleged a violation of the National
4 Environmental Policy Act of 1969. There, the Supreme Court rejected the notion that the possibility
5 of irreparable harm was enough to obtain preliminary relief and instead insisted that plaintiffs must
6 demonstrate a likelihood of irreparable harm. *See also Enyart v. Natl. Conf. of Bar Examiners*, 2010
7 WL 475361, at *6 (N.D. Cal. Fed. 4, 2010)(concluding that a likelihood of irreparable harm is still an
8 element for injunctive relief based on statutory violations).

9 HSR alternatively argues that it will suffer irreparable harm absent preliminary relief. It asserts
10 that if it cannot collect and use the funds due it from the bonded jobs, it cannot complete existing
11 projects or bid on new projects. Monetary damages, however, are a remedy for such a dispute, and
12 HSR's injury falls short of irreparable. Injunctive relief is premised upon the inadequacy of legal
13 remedies. *Los Angeles Memorial Coliseum Commn v. Natl. Football League*, 644 F.2d 1197, 1202 (9th
14 Cir. 1980). Mere injury, however substantial, is not enough. *Id.*, *citing*, *Sampson v. Murray*, 415 U.S.
15 61, 90, 94 S. Ct. 937, 952 (1974).

16 Finally, HSR is seeking preliminary injunctive relief not only to collect the funds, but to spend
17 them. HSR has informed the court that it must use the bonded job funds to pay the pre-petition claims
18 of its subcontractors and suppliers in order to complete the bonded jobs. The evidence also suggests that
19 these receivables will not be paid immediately. As a Chapter 11 debtor-in-possession, HSR cannot
20 simply use funds to pay pre-petition creditors. It can only do so through a confirmed plan of
21 reorganization or other court order. Nor has HSR addressed the fact that the bonded job funds are the
22 cash collateral of its senior secured creditor, Heritage Bank of Commerce. Accordingly, HSR has not
23 adequately established that a preliminary injunction will remedy any "immediate harm," even if
24 irreparable.

25 In light of the serious, and perhaps fatal, concerns regarding irreparable harm, HSR requires an
26 especially strong showing of likelihood of success on the merits as a counterbalance. HSR has not met
27 that burden. Substantial questions exist regarding HSR's likelihood of success on the merits. At this
28 juncture, the defendants have not answered the complaint, so the court does not know whether

1  defendants have affirmative defenses to HSR's claims nor the strength of those defenses. There is also
2  a substantial dispute regarding whether defendants' payment of the subcontractor and supplier claims
3  subrogates defendants to HSR's rights to the bonded job funds.  While the court's own research
4  uncovered some law indicating that these extended subrogation rights may apply, *see In re Colt*
5  *Engineering, Inc.,* 288 B.R. 861 (Bankr. C.D. Cal. 2003), neither party has, at this stage of the litigation,
6  adequately explained whether extended subrogation principles apply as part of general suretyship law
7  or whether they have been incorporated into California law.  On the record before this court, HSR has
8  not demonstrated a sufficiently strong likelihood of success needed to outweigh its lackluster showing
9  of irreparable harm.

10  Finally, the court notes that HSR's motion seeks far more than preliminary relief to maintain the
11 status quo while the merits of this dispute are resolved.  HSR requests immediate access to the disputed
12 funds so that it can use them for whatever purpose it deems appropriate.  That request, effectively, calls
13 for a final determination of its claims for relief.  That determination is better suited for a motion for
14 summary judgment or a trial on the merits.

## CONCLUSION

For the reasons stated, HSR's motion for preliminary injunction is denied without prejudice to a subsequent motion upon additional proof.

**\*\*\* END OF ORDER\*\*\***

5

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

Adversary No. 10-5309

**COURT SERVICE LIST**

Scott L. Goodsell
Gregory J. Charles
William J. Healy
Campeau, Goodsell and Smith
440 N 1st St. #100
San Jose, CA 95112

HSR General Engineering Contractors Inc.
1345 Vander Way
San Jose, CA 95112

James Diwik
Joel M. Long
Sedgwick, Detert, Moran & Arnold LLP
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, CA 94105-1008

Office of the U.S. Trustee / SJ
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004